UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MIKE SANTOS,**

        **Plaintiff,**

  v.                                       **Civil Action 2:19-cv-2984**
                                                  **Judge Edmund A. Sargus, Jr.**
                                                  **Magistrate Judge Chelsey M. Vascura**

**ANNETTE CHAMBERS-SMITH,** *et al.*,

        **Defendants.**

## REPORT AND RECOMMENDATION

    This is a civil rights action under 42 U.S.C. § 1983 in which Plaintiff, Mike Santos, an inmate in the custody of the Southern Ohio Correctional Facility ("SOCF") who is proceeding without the assistance of counsel, alleges that Defendants Annette Chambers-Smith, Director of the State of Ohio Department of Corrections, and Michael Davis, Religious Services Administrator for the Ohio Department of Rehabilitation and Corrections, violated the Free Exercise Clause of the First Amendment, as well as the Eighth and Fourteenth Amendments, by denying his request for kosher meals.  This matter is before the United States Magistrate Judge for a report and recommendation on Defendants' Motion for Summary Judgment (ECF No. 37), Plaintiff's Response in Opposition (ECF No. 43), and Defendants' Reply (ECF No. 44), as well as Plaintiff's Motion for Summary Judgment (ECF No. 38) and Defendants' Response in Opposition (ECF No. 42).[1]  For the following reasons, it is **RECOMMENDED** that Defendants'

---

[1] Plaintiff has not filed a Reply in support of his Motion for Summary Judgment, and the time to do so has now expired.

Motion (ECF No. 37) be **GRANTED IN PART and DENIED IN PART** and that Plaintiff's Motion (ECF No. 38) be **DENIED**.

## I. BACKGROUND

Plaintiff has been incarcerated since 2005. On each of August 26, 2016, and August 16, 2017, Plaintiff submitted a Request for Religious Accommodation to the Ohio Department of Rehabilitation and Correction ("ODRC") seeking approval to receive kosher meals in accordance with his professed Jewish Orthodox religious beliefs. (Requests for Religious Accommodation, ECF No. 37-1, PAGEID #579–82.) The request form used by the prison for religious accommodations required Plaintiff to identify his religion, specify the accommodation he was seeking, state the writings or teachings forming the basis for his request, identify a religious leader who could verify his request, describe his faith, identify the date and location of his bar mitzvah, explain how his faith impacts his life, list which resources he used to learn about his faith, identify those religious leaders who helped develop his faith, explain why accommodation is necessary for him to practice his faith, describe how he participates in his faith, and indicate how long he has practiced his faith. (*Id.*) In his 2017 request,[2] Plaintiff answered that he is a converted Orthodox Jew; he is requesting kosher meals; his request is supported by Leviticus Chapters 17–21 and Numbers Chapter 6; religious leaders were not available to verify his request because "the outside Jewish organizations don't accept me because I'm in prison"; "my faith is in the name of the 'most high' which I seek"; he "never had a bar mitzvah" as he is "a spiritual convert"; his faith impacts his life via "the peace I receive in my search to worship truth"; he "researched all religions in my search for truth and am strongly/spiritually drawn to convert to Judaism"; that "my religious leader is the most high"; that kosher meals are necessary to practice

---

[2] As explained below, Plaintiff's claims stemming from his 2016 request are time-barred.

2

his faith because "it is my faith to keep the divine order of the most high"; he participates in his faith "in my cell because the bible instructs me to seek (which gives my mind peace) which is better than accepting someone else's name that neither brings peace nor gives life"; and he has practiced his faith "since a few years prior to my incarceration." (*Id.* at PAGEID #80–82.)

Plaintiff's requests were denied on April 14, 2017, and November 28, 2017, respectively. (Disposition of Grievance, ECF No. 4, PAGID #53.) The reasons given for denial were, "I am unable to make a determination based on the information provided" and "I am unable to determine the extent to which the request represents a strongly-held religious belief," respectively. (Decisions of the Religious Services Administrator, ECF No. 44-2, ECF No. 4, PAGEID #59.)

After exhausting his appeal of the kosher meal denials through the prison grievance process, Plaintiff commenced this action on May 29, 2019 (ECF No. 1.) Plaintiff asserts claims against Defendants Annette Chambers-Smith and Mike Davis in both their individual and official capacities for violation of his First, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, and seeks monetary damages, injunctive relief, and a declaratory judgment. (Compl., ECF No. 4.)

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.*

Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.     ANALYSIS

**A.     Defendants' Motion for Summary Judgment**

Defendants make several arguments as to why they are entitled to summary judgment: (1) Plaintiff's allegations are insufficient to establish a violation of the Eighth or Fourteenth Amendments; (2) Plaintiff's request for kosher meals does not stem from a sincerely-held religious belief; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's official capacity claims are barred by the Eleventh Amendment; (5) Plaintiff's claims are barred by the two-year statute of limitations applicable to § 1983 claims; (6) the allegations against Defendant Chambers-Smith are insufficient to establish supervisor liability under § 1983; and (7) Plaintiff's

claims for money damages are barred by the Prison Litigation Reform Act. The undersigned will consider each argument in turn.

      **1.     Plaintiff's allegations are insufficient to establish a violation of the Eighth or Fourteenth Amendment.**

Although Plaintiff's Complaint and briefing focus primarily on the alleged violation of his First Amendment rights, he also makes passing references to violations of the Eighth and Fourteenth Amendments. He has failed to adequately allege claims under either of these two amendments.

Plaintiff vaguely refers to Defendants' "deliberately not providing Plaintiff with a kosher diet" in violation of the Eighth Amendment. "The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." *Farmer v. Brennan*, 511 U.S. 825, 932-33 (1994) (internal quotation marks and citations omitted). *See also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)) (holding that the Eighth Amendment "requires that inmates be furnished with the basic human needs"). To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component for a claim based upon a failure to prevent harm, "the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). "To satisfy the subjective component, an inmate must show that prison officials had a sufficiently culpable state of mind." *Berksire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (internal quotation marks and citations omitted). Here,

because Plaintiff has not alleged any harm sufficient to satisfy the requisite objective component, he cannot prevail on an Eighth Amendment claim.

Plaintiff also vaguely refers to religious discrimination in violation of the Fourteenth Amendment. (Pl.'s Resp. 2, ECF No. 43). "The threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). In order for the actions of prison officials to rise to the level of a violation of the Equal Protection Clause, a prisoner must show that he or she was treated differently than similarly situated prisoners and that there was no rational basis for the difference in treatment. *See Heard v. Caruso*, 351 F. App'x 1, 11 (6th Cir. 2009) (citing *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996)). Because Plaintiff's Complaint and summary judgment briefing are devoid of any reference to disparate treatment of other similarly-situated prisoners, Plaintiff cannot establish a Fourteenth Amendment violation.

Accordingly, to the extent Plaintiff advances claims under the Eighth and Fourteenth Amendments, Defendants are entitled to summary judgment on these claims.

**2. An issue of fact remains as to whether Plaintiff's request for kosher meals represents a sincerely-held religious belief.**

The majority of Plaintiff's Complaint and summary judgment briefing focuses on the alleged violation of the Free Exercise Clause of the First Amendment resulting from the denial of his request for kosher meals. The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011). "Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the

6

person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted). The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs. *Id.* "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted). Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action is nevertheless "valid if it is 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In every case involving the Free Exercise Clause, the threshold inquiry is whether the religious belief in question is "sincerely held." *United States v. Seeger*, 380 U.S. 163, 185 (1965); *Colvin*, 605 F.3d at 298 (6th Cir. 2010) ("[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of whether the beliefs professed are sincerely held.") (citations, alterations, and internal quotation marks omitted). This threshold inquiry "is, of course, a question of fact." *Seeger*, 380 U.S. at 163.

The undersigned finds there is a dispute of fact as to the sincerity of Plaintiff's belief that he must consume only kosher food. Plaintiff has repeatedly asserted his Jewish Orthodox faith, including the kosher dietary requirement. For instance, he changed his religious affiliation with the prison to Jewish Orthodox on August 1, 2016 (Santos Dep. 45, ECF No. 36), and he requested kosher meals in both 2016 and 2017 (Requests for Religious Accommodation, ECF No. 37-1, PAGEID #579–82). He further testified at his deposition that, after considering several religions, he concluded that Orthodox Judaism "was the most genuine" (Santos Dep. 12,

ECF No. 36); that he uses the Torah to learn about Orthodox Judaism (*id.* at 28); that he made requests of prison officials to meet with a rabbi (*id.* at 44); that he wrote to Jewish organizations in New York and Florida to obtain help with his religious studies (*id.* at 46–53); that he is "trying [his] best to understand" and "trying [his] best to abide by" the tenets of Orthodox Judaism (*id.* at 77); that he attended classes on the Jewish religion offered at a previous correction facility (*id.* at 96–97); and that he knows keeping kosher to be a central requirement of Orthodox Judaism (*id.* at 59).

In response, Defendants contend that Plaintiff's alleged sincere belief in Orthodox Judaism and the kosher diet requirement is belied by Plaintiff's frequent changing of his religious affiliation (*see* Santos Dep. at 15–16, acknowledging previous affiliations with Catholicism, Santeria, and Kingism), his purchase of non-kosher food from the prison commissary (*id.* at 123–24), and his general lack of knowledge about specific Jewish Orthodox practices and rituals (*id.* at 33–36, 53–55, 75, 86–87, 90-91, 121). Defendants also submit declarations from various prison employees asserting that Plaintiff did not attend available Hebrew classes or request to take part in a Passover Seder (Kostenko Decl., ECF No. 37-5; York Decl., ECF No. 37-2); that Plaintiff did not request any books on Judaism from the prison library until after his deposition (Strickland Decl., ECF No. 37-4); and that in January 2020, Plaintiff requested permission to attend Christian retreats (Ruckel Decl., ECF No. 37-3). The undersigned finds that this testimony is not so overwhelming as to foreclose the possibility that any reasonable jury could conclude Plaintiff's belief is sincere. This is especially so as Plaintiff also testified that his practice of Orthodox Judaism is hampered by the fact that he is presently incarcerated in a maximum-security facility, where the ability to attend classes, receive religious materials, and celebrate Jewish holidays is constrained. (*Id.* at 120). Further, Plaintiff testified

8

that he usually does not consume the non-kosher food he purchases from the commissary, but rather trades it with other prisoners for other desirable items that he cannot purchase frequently due to prison policies. (*Id.* at 125–26).

Accordingly, the undersigned finds that an issue of fact remains as to whether Plaintiff sincerely holds a religious belief requiring him to maintain a kosher diet. As a result, Defendants are not entitled to summary judgment on Plaintiff's First Amendment claim.[3]

### 3. Defendants are not entitled to qualified immunity.

Defendants contend that, even if Plaintiff's First Amendment rights were violated, they are protected by qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012). "[Q]ualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." *Hall v. Sweet*, 666 F. App'x 469, 477–78 (6th Cir. 2016) (citing *Pearson v. Callahan* 555 U.S. 223, 231 (2009)). In determining whether an official is entitled to qualified immunity, the Court asks two questions: "First, viewing the facts in the light

---

[3] If a prison action is found to burden a prisoner's First Amendment rights, courts go on to examine the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987) to determine whether the action is nevertheless valid because it is reasonably related to a legitimate penological interest. Because an issue of fact exists at the threshold inquiry of whether Plaintiff's belief is sincerely held, the undersigned does not reach the *Turner* analysis. However, the undersigned notes that, if Plaintiff's belief is determined to be sincerely-held, it would be difficult for Defendants to establish that denying him kosher meals is related to a legitimate penological interest because they acknowledge kosher meals are provided to other prisoners who "have demonstrated that kosher food is necessary for the practice of their religion." (Defs.' Mot. 17, ECF No. 37.)

9

most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Mitchell v. Schlabach*, 864 F.3d 416, 420 (6th Cir. 2017) (quoting *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010)). Government officials are protected from damages liability by the doctrine of qualified immunity unless the answer to both questions is yes. *Id.* Courts "are free to consider those questions in whatever order is appropriate in light of the issues before them." *Moldowan*, 578 F.3d at 375. "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Id.* (citing *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006) and *Barrett v. Steubenville City Schools,* 388 F.3d 967, 970 (6th Cir. 2004)).

Here, Defendants contend that they cannot have committed a constitutional violation because "there [is no] evidence in the record suggesting that Plaintiff's request for a kosher diet is founded on a sincerely-held religious belief since Plaintiff knows virtually nothing about Orthodox Judaism and, as his deposition testimony demonstrates, had not bothered to learn anything about it since becoming a spiritual convert in 2016." (Defs.' Mot. 20, ECF No. 37.) Defendants further contend that, "even if the Court were to find a constitutional violation, Plaintiff has failed to show that the unlawfulness of Defendants' conduct was clearly established at the time." (*Id.*) The undersigned disagrees with Defendants on both points.

      **a.**     **An issue of fact remains as to whether Defendants violated Plaintiff's First Amendment rights.**

As explained *supra*, an issue of fact remains as to the threshold First Amendment inquiry of Plaintiff's sincerely-held religious belief. Moreover, the basis for Defendants' conclusions in 2017 that Plaintiff lacked a sincerely-held religious belief is far from clear. The written denials stated only, "I am unable to make a determination based on the information provided" and "I am

unable to determine the extent to which the request represents a strongly-held religious belief," respectively. (Decisions of the Religious Services Administrator, ECF No. 44-2, ECF No. 4, PAGEID #59.) In their briefing, Defendants explain their decision-making at the time only by stating, "Plaintiff's responses to [the] questions [on the religious accommodations request form] were conclusory in nature and less than convincing." (Defs.' Mot. 10, ECF No. 37.)

However, Defendant's subsequent arguments and deposition questions suggest Defendants primarily discounted the sincerity of Plaintiff's belief that he required a kosher diet based on his lack of knowledge about traditional Jewish Orthodox teachings and practices. (*See* Defs.' Mot. 2–3, ECF No. 37) ("[B]ecause Plaintiff has failed to demonstrate that he has sincerely converted to Orthodox Judaism, and has little knowledge of that faith other than that some Jews believe in God and that some keep kosher, he has no constitutional right to the permanent injunction, declaratory relief or monetary damages he seeks from the Defendants."). Defendants spend much of their briefing recounting all the deposition questions regarding Judaism that Plaintiff was not able to answer to their satisfaction, highlighting Plaintiff's lack of knowledge of bar mitzvahs, Passover, the visual appearance of the Torah, the Talmud, the Mishnah, matzos, tikkun olam, minyans, or Hebrew. (*Id.* at 3–4.)

Yet the United States Court of Appeals for the Sixth Circuit has unambiguously held that prisoners cannot be denied kosher meals on grounds that they lack objective knowledge of Judaism. *Colvin v. Caruso*, 605 F.3d 282, 297–98 (6th Cir. 2010). In *Colvin*, the prison denied the plaintiff's request for kosher meals on the basis that he exhibited "minimal knowledge of Judaism and its dietary requirements" and "provided minimal information in response to a question about his faith's major teachings." *Id.* at 297. The Sixth Circuit quoted a magistrate judge's discussion from district court proceedings in a previous lawsuit by Colvin:

11

> Defendants' purely objective approach cannot be squared with First Amendment jurisprudence. In order to be entitled to accommodation, a person's beliefs need not be "acceptable, logical, consistent or comprehensible to others." *Thomas,* 450 U.S. at 714, 101 S.Ct. 1425. Nor must they be shared by all members of a religion or be part of any orthodox or official interpretation of church doctrine. *Id.* at 715–16, 101 S.Ct. 1425. Defendants in the present case have gone beyond an inquiry into the subjective sincerity by administering a test on Judaism and judging for themselves the congruence between plaintiff's beliefs and Judaism, as prison officials understand it.
>
> By basing their decision to deny plaintiff's request for kosher meals purely on the content of plaintiff's knowledge of Judaism, defendants have set themselves up as arbiters of religious orthodoxy. To be entitled to be treated as a Jew in prison, plaintiff is not required to demonstrate that he is a good Jew or an expert in the Torah. He just must show that he sincerely adheres to the Jewish faith, despite his personal flaws and the obvious gaps in his religious education.

*Id.* at 298 (quoting *Colvin v. Curtis,* No. 02–cv–0728, Report and Recommendation (W.D. Mich. Aug. 25, 2003) (ECF No. 70 at 13–14). Concurring with the magistrate judge's analysis, the Sixth Circuit held that, "to the extent that [prison officials'] decision to deny Colvin's [kosher meal] request was based on his lack of objective knowledge, *it was unconstitutional*." *Id.* at 298 (emphasis added). Accordingly, there is sufficient evidence in the record to demonstrate an issue of fact as to whether Defendants violated Plaintiff's First Amendment rights by denying his kosher meal request on the basis of his lack of objective knowledge of traditional Jewish teachings and practices.

### b. To the extent Defendants violated Plaintiff's First Amendment rights, the violation was clearly established.

Moreover, if this constitutional violation occurred, the violation was clearly established at the time Plaintiff's 2017 request for kosher meals was denied. As explained by the Supreme Court of the United States:

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

12

> previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The facts of the present case easily clear the bar set by *Wilson* and *Anderson*, as "the very action in question" (*i.e.*, denying kosher meals to a prisoner based on lack of objective knowledge about traditional Jewish teachings and practices) "has previously been held unlawful" by *Colvin*. The one case cited by Defendant for the proposition that any constitutional violation would not be clearly established was an unreported district court case from the Western District of Michigan. *See Allison v. Martin*, No. 08-15093-BC, 2011 WL 6217425, at *6 (E.D. Mich. Dec. 14, 2011) (holding that any constitutional violation stemming from denial of kosher meals based on prisoner's lack of knowledge of Judaism was not clearly established). However, the denial in *Allison* occurred prior to the Sixth Circuit's decision in *Colvin*, and *Allison* is therefore inapplicable to the kosher meal denials made seven years post-*Colvin* in this case.

Because an issue of fact remains as to whether Defendants violated Plaintiff's First Amendment rights, and because any such violation would have been clearly established, Defendants are not entitled to qualified immunity.

**4. Plaintiff's official capacity claims for money damages, but not for injunctive or declaratory relief, are barred by the Eleventh Amendment.**

Plaintiff plainly asserts claims against Defendants in both their official and individual capacities. (Compl. ¶ 6, ECF No. 4) ("Each defendant is sued individually and in his official capacity.") Defendants assert in a footnote that, "[t]o the extent Plaintiff has brought his § 1983 claims against the Defendants in their official capacities, they are barred both by the statute itself and by the Eleventh Amendment." (Defs.' Mot. 7 n.7, ECF No. 37) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Defendants are correct that "[i]n 1989, the Supreme Court ruled that states and state employees sued in their official capacities were not 'persons'

13

under § 1983, and therefore could not be held liable for money damages." *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) (citing *Will*, 491 U.S. at 71).

However, the Eleventh Amendment's proscription on official capacity claims against state officials does not extend to claims for injunctive or declaratory relief, as *Will* itself recognized. 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citations omitted); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [Eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief.").

Accordingly, Defendants are entitled to judgment on Eleventh Amendment grounds on Plaintiff's claims against them in their official capacities for money damages only.

### 5. Plaintiff's claims are only partially time-barred.

Defendants assert Plaintiff's claims are time-barred in their entirety. "In § 1983 suits, the applicable statute of limitations is determined by state law, while the 'date on which the statute of limitations begins to run . . . is a question of federal law.'" *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (*quoting Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (alteration in original)). Ohio Revised Code § 2305.10 sets forth a two-year statute of limitations for § 1983 claims. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). That statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

14

Defendants point out that Davis's first denial of Plaintiff's request for kosher meals occurred on April 14, 2017, yet Plaintiff did not commence this action until May 29, 2019[4] (ECF No. 4), more than two years later. However, Plaintiff's second request for kosher meals was not denied until November 28, 2017. (Decision of the Religious Services Administrator, ECF No. 4, PAGEID #59.) The second denial falls within § 1983's two-year limitations period and is thus timely. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims related to the April 14, 2017 denial only.[5]

### 6. Plaintiff's allegations are insufficient to establish supervisory liability against Defendant Chambers-Smith under § 1983.

Defendants contend that Plaintiff's allegations, even if accepted as true, are insufficient to support supervisor liability against Defendant Chambers-Smith. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999)). "Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Id.* Instead, for Chambers-Smith "to be individually liable for failing to train or supervise, Plaintiff[ ] needed to demonstrate that [she] took deliberate action or was otherwise involved in [her supervisees'] illegal acts." *See Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).

---

[4] Defendants incorrectly assert that Plaintiff commenced this action on July 12, 2019, the date Plaintiff's Complaint was filed on the docket following the Court's initial screen under 28 U.S.C. §§ 1915 and 1915A. However, under the "prison mailbox rule," a prisoner's complaint is deemed filed on the date on which it was handed over to prison officials for mailing, and this date is presumed, absent contrary evidence, to be the date the prisoner signed the complaint. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Here, that was May 29, 2019.

[5] The April 14, 2017 denial is a "discrete act," and therefore Plaintiff's claims related to the earlier denial are not saved under the continuing violation doctrine by the later timely claims. *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003).

Here, Plaintiff's Complaint states only that "Defendant Annette Chambers-Smith is too responsible for violating Plaintiff's rights for failure to properly supervise her staff." (Compl. ¶ 10, ECF No. 4). Plaintiff's summary judgment briefing does not elaborate on these allegations. Accordingly, Plaintiff has failed to sufficiently allege, let alone demonstrate an issue of fact, regarding Chambers-Smith's supervisory liability. *See Gregory*, 444 F.3d at 751 (upholding summary judgment for defendants where the plaintiff "present[ed] evidence only that supervisors Thomas, Ammon, and Kessinger failed to review their subordinates' work"). Defendant Chambers-Smith is therefore entitled to summary judgment on all claims against her in her individual capacity.

### 7. Plaintiff's claims for monetary damages are not barred by the Prison Litigation Reform Act.

Defendants argue that the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), "precludes an award of monetary damages for First Amendment claims if the inmate does not suffer a physical injury." (Defs.' Mot. 12, ECF No. 37.) Subsection (e) of § 1997e provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

Defendants cite case law relying on this provision to bar constitutional claims for money damages by prisoners who have suffered no physical injuries. *See Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-CV-1209, 2014 WL 3459880, at *10 (S.D. Ohio July 11, 2014), *report and recommendation adopted*, 2014 WL 4181703 (S.D. Ohio Aug. 21, 2014) (citing *Yaacov v. Collins,* No. 09–4148, 2010 U.S.App. LEXIS 27719, at *10 (6th Cir. Dec. 1, 2010)).

However, the Sixth Circuit has spoken definitely on this issue in the time since Defendants' cited cases were decided. In *King v. Zamiara*, the Sixth Circuit held that "deprivations of First Amendment rights are themselves injuries, apart from any mental,

16

emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to First Amendment rights." 788 F.3d 207, 212 (6th Cir. 2015). *See also Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (the PLRA does not bar compensatory damages for constitutional violations). Accordingly, Plaintiff's claims are not barred by the PLRA.

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff also moves for summary judgment (ECF No. 38), but his motion is unsupported by any declarations made under penalty of perjury or other admissible evidence. Further, his motion primarily repeats the same allegations made in his Complaint, and, as explained *supra*, there remains an issue of fact as to the threshold inquiry of whether he sincerely believes he must consume a kosher diet as part of his religious faith. Because all of Plaintiff's remaining claims depend on that threshold inquiry, he is not entitled to summary judgment.

### IV.     DISPOSITION

For the following reasons, it is **RECOMMENDED** that Defendants' Motion (ECF No. 37) be **GRANTED IN PART and DENIED IN PART**, such that Plaintiff's claims for violations of the Eighth and Fourteenth Amendments, Plaintiff's claims against Defendants in their official capacity for money damages, Plaintiff's claims stemming from the April 14, 2017 denial of his request for kosher meals, and Plaintiff's claims against Defendant Chambers-Smith in her individual capacity are **DISMISSED**. Plaintiff may proceed with his remaining First Amendment claims. It is further **RECOMMENDED** that Plaintiff's Motion (ECF No. 38) be **DENIED**.

### V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

      The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                                                                   /s/ *Chelsey M. Vascura*
                                                                               CHELSEY M. VASCURA
                                                                               UNITED STATES MAGISTRATE JUDGE