UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


MIKE SANTOS,

    Plaintiff,

  v.             Civil Action 2:19-cv-2984
                 JUDGE EDMUND A. SARGUS, JR.
                 Magistrate Judge Chelsey M. Vascura

ANNETTE CHAMBERS-SMITH, *et al.*,

    Defendants.


## OPINION AND ORDER

This matter is before the Court for consideration of the Magistrate Judge's *April 22, 2020 Report and Recommendation* (ECF No. 45) addressing Defendants Annette Chambers-Smith and Michael Davis's ("Defendants") *Motion for Summary Judgment* (ECF No. 37) and Plaintiff Mike Santos's ("Santos") *Motion for Summary Judgment* (ECF No. 38).  Also before the Court are Defendants' *Objections to Report and Recommendation* (ECF No. 46).

For the reasons below, the Court **SUSTAINS** Defendants' *Objections* (ECF No. 46) and **ADOPTS IN PART** and **REJECTS IN PART** the *April 22, 2020 Report and Recommendation* (ECF No. 45), thereby **GRANTING** Defendants' *Motion for Summary Judgment* (ECF No. 37) and **DENYING** Santos's *Motion for Summary Judgment* (ECF No. 38).

**I.**

Santos has been incarcerated since 2005.  On each of August 26, 2016, and August 16, 2017, Santos submitted a Request for Religious Accommodation to the Ohio Department of Rehabilitation and Correction ("ODRC") seeking approval to receive kosher meals in accordance

with his professed Jewish Orthodox religious beliefs.  (Requests for Religious Accommodation, ECF No. 37-1, PAGEID #579–82).  The request form required Santos to identify his religion, specify the accommodation he was seeking, state the writings or teachings forming the basis for his request, identify a religious leader who could verify his request, describe his faith, identify the date and location of his bar mitzvah, explain how his faith impacts his life, list which resources he used to learn about his faith, identify those religious leaders who helped develop his faith, explain why accommodation is necessary for him to practice his faith, describe how he participates in his faith, and indicate how long he has practiced his faith. (*Id.*).  In his 2017 request,[1] Santos answered that he is a converted Orthodox Jew; he is requesting kosher meals; his request is supported by Leviticus Chapters 17–21 and Numbers Chapter 6; religious leaders were not available to verify his request because "the outside Jewish organizations don't accept me because I'm in prison"; "my faith is in the name of the 'most high' which I seek"; he "never had a bar mitzvah" as he is "a spiritual convert"; his faith impacts his life via "the peace I receive in my search to worship truth"; he "researched all religions in my search for truth and am strongly/spiritually drawn to convert to Judaism"; that "my religious leader is the most high"; that kosher meals are necessary to practice his faith because "it is my faith to keep the divine order of the most high"; he participates in his faith "in my cell because the bible instructs me to seek (which gives my mind peace) which is better than accepting someone else's name that neither brings peace nor gives life"; and he has practiced his faith "since a few years prior to my incarceration."  (*Id.* at PAGEID #80–82).

Santos's requests were denied on April 14, 2017, and November 28, 2017, respectively. (Disposition of Grievance, ECF No. 4, PAGID #53).  The reasons given for denial were, "I am

---

[1]As the Magistrate Judge found, Santos's claims related to his 2016 request are time-barred.

unable to make a determination based on the information provided" and "I am unable to

determine the extent to which the request represents a strongly-held religious belief,"

respectively.  (Decisions of the Religious Services Administrator, ECF No. 44-2, ECF No. 4,

PAGEID #59).

　　　After exhausting his appeal of the kosher meal denials through the prison grievance

process, Santos commenced this action on May 29, 2019.  (ECF No. 1).  Santos's Complaint

asserts claims against Defendants Annette Chambers-Smith and Michael Davis in both their

individual and official capacities for violation of his First, Eighth, and Fourteenth Amendment

rights under 42 U.S.C. § 1983, and seeks monetary damages, injunctive relief, and a declaratory

judgment.  (Compl., ECF No. 4).  Thereafter, the parties filed cross-motions for summary

judgment (ECF Nos. 37–38).  The Magistrate Judge issued a Report, recommending that this

Court grant summary judgment in favor of Defendants on Santos's claims (1) for violation of the

Eighth and Fourteenth Amendment, (2) for money damages against Defendants in their official

capacities, (3) stemming from the time-barred April 14, 2017 denial of his request for kosher

meals, and (4) for supervisory liability against Defendant Chambers-Smith; but deny summary

judgment for any party on Santos's remaining First Amendment claims.  *See April 22, 2020*

*Report and Recommendation*.  (ECF No. 45).  Defendants object only to the Magistrate Judge's

recommendation to deny summary judgment in their favor on the remaining First Amendment

claims.

## II.

　　　If a party objects within the allotted time to a report and recommendation, 28 U.S.C.

§ 636(b)(1) provides that a district court "shall make a de novo determination of those portions

of the report or specified proposed findings or recommendations to which objection is made.

The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson,* 477 U.S. at 251; *see Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995); *see also*

4

*Matsushita,* 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**III.**

Defendants do not object to the Magistrate Judge's conclusion that an issue of fact exists as to the sincerity of Santos's belief that he must consume only kosher food; however, Defendants object to the Magistrate Judge's conclusion that an issue of fact as to the sincerity of Santos's belief is sufficient to preclude summary judgment in their favor.

Defendants are correct that most courts, upon finding an issue of fact as to the sincerity of the inmate's belief, go on to consider whether the prison's action was nonetheless reasonable under *Turner v. Safley*, 482 U.S. 78 (1987).  *See*, *e.g.*, *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009) (even if plaintiff's belief that he must consume only kosher foods was sincere, summary judgment for defendants was warranted because prison's denial of kosher meals was reasonable under *Turner*); *Nixson v. Davis*, No. 2:18-CV-1720, 2020 WL 1929363, at *4–6 (S.D. Ohio Apr. 21, 2020) (same); *but see*, *e.g.*, *Horacek v. Burnett*, No. 07-11885, 2008 WL 4427825, at *8 (E.D. Mich. Aug. 19, 2008), *report and recommendation adopted in relevant part*, No. 07-11885, 2008 WL 4427792 (E.D. Mich. Sept. 30, 2008) (denying summary judgment for defendants without undertaking *Turner*'s reasonableness analysis because plaintiff demonstrated an issue of fact as to the sincerity of his belief).   The Court finds the Magistrate Judge erred in failing to analyze the reasonableness of Defendants' decision under *Turner*.

Santos's claim that his First Amendment right to the free exercise of religion was violated by Defendants' denial of his requests for kosher meals "must overcome the deferential standard set by the Supreme Court in *Turner*."  *Berryman*, 343 F. App'x at 5.  In *Turner*, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."   482 U.S. at 89.  This deferential

standard is required by the "inordinately difficult undertaking" of prison administration, a task

"that requires expertise, planning, and the commitment of resources, all of which are peculiarly

within the province of the legislative and executive branches of government." *Id.* at 85.  *Turner*

set forth four factors for courts to consider in assessing a prison policy or action's

reasonableness:

> (1)    there must be a valid, rational connection between the prison policy or action and the legitimate governmental interest put forward to justify it;
>
> (2)    whether there are alternative means of exercising the right that remains open to prison inmates;
>
> (3)    the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> (4)    whether there are ready alternatives available that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests.

*Id.* at 89–91.  The defendant carries "the initial burden to articulate a valid, rational connection

between the challenged action and the legitimate governmental interest that motivated

it." *O'Connor v. Leach*, No. 1:18-CV-977, 2020 WL 838084, at *3–4 (W.D. Mich. Jan. 27,

2020), *report and recommendation adopted*, 2020 WL 2187814 (W.D. Mich. May 6, 2020).  If

this first factor is not met, "the regulation is unconstitutional, and the other factors do not

matter."  *Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018) (quoting *Muhammad v. Pitcher*,

35 F.3d 1081, 1084 (6th Cir. 1994)).

 If, however, the first factor is met, the Court balances the three remaining factors.  "The

prisoner [bears] the burden as to the last three *Turner* factors."  *Heru v. Ohio*, No. 2:17-CV-658,

2019 WL 2524263, at *4 (S.D. Ohio June 19, 2019) (quoting *Swansbrough v. Martin*, No. 1:14-

CV-1246, 2016 WL 11262507, at *3 (W.D. Mich. Oct. 4, 2016), *report and recommendation*

*adopted*, No. 1:14-CV-1246, 2017 WL 64917 (W.D. Mich. Jan. 6, 2017)); *see also Overton v.*

*Bazzetta*, 539 U.S. 126, 132 (2003) (collecting cases) ("The burden . . . is not on the State to

prove the validity of prison regulations but on the prisoner to disprove it."). These three factors should be "balanced together" as "guidelines for the court to assess whether the prison officials' actions are reasonably related to a valid penological basis," and need not be "weighed evenly." *Flagner v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001).

Here, Defendants set forth legitimate reasons for the ODRC's policy limiting kosher meals to those inmates who hold a sincere belief that they must consume only kosher foods: namely, containing prison costs and maintaining discipline among prisoners. "Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison." *Berryman*, 343 F. App'x at 6 (6th Cir. 2009). Allowing any inmate, regardless of religious belief, to receive kosher meals would unnecessarily increase costs. Moreover, such a policy would mean that inmates "could hide sealed kosher food containers on their persons and transport them back to their cells, thereby promoting inmate-bartering or improper food storage, both prohibited for safety, security and health reasons." (Davis Decl. ¶ 12, ECF No. 37-1). And, indeed, Santos does not challenge the *policy* that kosher meals are reserved for those with a sincere belief. Rather, he challenges the *conclusion* pursuant to that policy that his belief was not sincere. The Court's task, therefore, is to determine whether Defendants reasonably (rather than arbitrarily or irrationally) concluded that Santos's kosher meal request was not based on a sincere religious belief. *See Turner*, 482 U.S. at 89–90.

Defendants provide several reasons underlying their decision that Santos's belief is not sincere. Some of these reasons do not pass constitutional muster, even under the deferential *Turner* standard. For instance, Defendants rely heavily in their briefing on Santos's minimal knowledge of traditional Orthodox Jewish teachings and practices. However, the Sixth Circuit

7

has unambiguously held that prisoners cannot be denied kosher meals on grounds that they lack

objective knowledge of Judaism.  *Colvin v. Caruso*, 605 F.3d 282, 297–98 (6th Cir. 2010).  Thus,

"to the extent that [prison officials'] decision to deny [Santos's] [kosher meal] request was based

on his lack of objective knowledge, *it was unconstitutional*."  *See id.* at 298 (emphasis added).

Defendants also rely on two conduct reports in which Santos was found in possession of shanks

and threatened violence against prison officials, which Defendants found "concerning."  (Davis

Decl. ¶¶ 8, 10–11, ECF No. 37-1).  However, both incidents occurred *after* Santos's second

kosher meal request was denied, and therefore could not have been a reason for the denials.

Finally, Defendants argue that Santos's sincerity is doubtful because Defendant Davis "contacted

the Aleph Institute.  The Aleph Institute supports incarcerated Jewish persons in Ohio and

around the county.  Mr. Santos could have registered with that organization by submitting an

application to verify his Jewish heredity.  He had not."  (*Id.* ¶ 7).  However, it is undisputed that

Santos is not Jewish by birth; he contends he converted to Orthodox Judaism later in life.

(Requests for Religious Accommodation, ECF No. 37-1, PAGEID #580, 582).  It would hardly

be rational to fault Santos for failing to submit an application to verify his Jewish heredity when

he has none.

However, Defendants also rely on several other reasons which ultimately support the

reasonableness of their decision.  First, Santos provided conflicting information as to how long

he had been practicing Judaism in his two kosher meal requests: in August of 2016, he asserted

he had been practicing since "January 2016"; in August of 2017, he asserted he had been

practicing "since a few years prior to my incarceration [in 2005]."  (Requests for Religious

Accommodation, ECF No. 37-1, PAGEID #580, 582).  Santos has never explained this

discrepancy of more than a decade.  Second, Santos has changed his religious affiliations

8

frequently since his incarceration.  After initially registering as Catholic in 2005, he changed his affiliation to Santeria in 2009, then changed to Kingism in 2014, and finally changed to Judaism in 2016.  (Santos Dep. 15–16, 43–46).  These frequent changes could indicate Santos was not ever fully committed to any one religious ideology.  *See Hall v. Burnett*, No. 2:06-CV-193, 2008 WL 680394, at *4 (W.D. Mich. Mar. 7, 2008) (finding prison's decision to deny kosher meals reasonable in part due to the inmate's frequent change of religious affiliation).  Finally, Santos was found with a Kingism-related symbol on his J-pay player in October 2017 (after he made both requests for kosher meals, but before his second request was denied).  (Conduct Report, ECF No. 37-1, PAGEID #576).  Although Santos testified at his deposition that he received the email with the symbol as an attachment several years prior, and had not deleted the symbol because it would also require him to delete family photos attached to the same email (Santos Dep. 101–104, ECF No. 36), the Court finds that, under *Turner*'s deferential standard, this is nevertheless some evidence that Santos maintained an affiliation with Kingism after his stated conversion to Judaism.  In sum, the Court finds that the first *Turner* factor weighs in favor of Defendants because there was a rational connection between their conclusion that Santos's belief was not sincere and the legitimate governmental interests underlying the ODRC policy that limits kosher meals to inmates who sincerely believe that consuming only such meals is required by their religion.

The remaining three factors likewise favor Defendants.  As to the second factor, Santos has an alternative means of exercising his religion: Defendant Davis asserts that Santos could achieve his goal of eating only kosher food by selecting the meatless options available to all prisoners and supplementing those options with kosher food purchased from the commissary.  (Davis Decl. ¶ 16, ECF No. 37-1).  Santos has not articulated any reason why this alternative

would not satisfy his religious requirements, and prison records demonstrate that he regularly

purchases food from the commissary.  (Commissary Records, ECF No. 18-1).  Moreover, Santos

is not precluded from making another request for kosher meals in the future.  (Davis Decl. ¶ 18,

ECF No. 37-1).  *See O'Connor,* 2020 WL 838084, at *4 (second *Turner* factor weighed in favor

of defendants when inmate could purchase kosher food from the commissary and reapply to the

kosher meal program in the future); *Ewing v. Finco*, No. 1:17-CV-505, 2019 WL 8105992, at *9

(W.D. Mich. Sept. 18, 2019), *report and recommendation adopted*, 2019 WL 6485869 (W.D.

Mich. Dec. 3, 2019) (same).

    As to the third factor, courts have recognized that expanding access to kosher meals can

create and security- and cost-related impacts on guards, inmates, and prison resources.  *E.g.*,

*Yaacov v. Collins*, 649 F. Supp. 2d 679, 688–89 (N.D. Ohio 2009) (third *Turner* factor weighed

in favor of defendants due to cost associated with providing kosher meals); *Berryman*, 343 F.

App'x at 6 (security and discipline concerns implicated by Jewish inmate's purchase of non-

kosher items for another prisoner).  Finally, Santos has not offered any ready alternatives at a *de

minimis* cost to the prison.  *Nixson*, 2020 WL 1929363, at *6 (fourth *Turner* factor weighed in

favor of defendants when inmate made no showing of ready alternatives); *Berryman*, 343 F.

App'x at 6 (same).

    In sum, the weight of the *Turner* factors supports a finding of reasonableness, and

therefore no First Amendment violation occurred.  Accordingly, the Court rejects the Magistrate

Judge's conclusion that Defendants are not entitled to summary judgment based on the issue of

fact as to the sincerity of Santos's belief.  Similarly, the Court rejects the Magistrate Judge's

finding that Defendants are not entitled to qualified immunity.  *See*, *e.g.*, *Mitchell v. Schlabach*,

864 F.3d 416, 420 (6th Cir. 2017) (qualified immunity applies unless the defendants' conduct

10

constituted a clearly-established violation of a constitutional right).  As a result, Defendants are entitled to summary judgment on Santos's First Amendment claims for compensatory, injunctive, and declaratory relief.  The Court adopts the remaining portions of the Magistrate Judge's *April 22, 2020 Report and Recommendation*.

## IV.

In conclusion, the Court **SUSTAINS** Defendants' *Objections* (ECF No. 46) and **ADOPTS IN PART** and **REJECTS IN PART** the *April 22, 2020 Report and Recommendation* (ECF No. 45), thereby **GRANTING** Defendants' *Motion for Summary Judgment* (ECF No. 37) and **DENYING** Santos's *Motion for Summary Judgment* (ECF No. 38).

**IT IS SO ORDERED.**


8/3/2020                                              s/Edmund A. Sargus, Jr.
**DATE**                                              **EDMUND A. SARGUS, JR.**
                                                      **UNITED STATES DISTRICT JUDGE**